AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 1 6 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.
)
Samsung Galaxy J2 Prime with IMEI )
#356375082635711 )  19MJ2057
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*              *Offense Description*
21 USC 952, 960, 963        Importation of a Controlled Substance; Conspiracy to commit same

The application is based on these facts:

See attached Affidavit of Special Agent Pearlene Hill

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Pearlene Hill, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/16/19

*Judge's signature*

City and state: San Diego, CA                    Hon. Michael S. Berg, U.S. Magistrate Judge
                                                 *Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Pearlene Hill, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations Special Agents for the following target property: a cellular telephone seized on February 26, 2019, from Jose Manuel MONTERREY ("MONTERREY"), at the Otay Mesa, California Port of Entry. The cellular telephone is a Samsung Galaxy J2 Prime with IMEI #356375082635711 (the "TARGET TELEPHONE"). The TARGET TELEPHONE was seized from MONTERREY, when he entered the United States from Mexico at the Otay Mesa, California Port of Entry driving a 2005 Nissan Altima concealing approximately 38.92 kilograms (85.80 pounds) of methamphetamine. I believe that the TARGET TELEPHONE was used by MONTERREY and his co-conspirators during a drug smuggling event on February 26, 2019. He has been charged with importation of a controlled substance (methamphetamine) in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 19-cr-1021-JAH.

2. Probable cause exists to believe that the TARGET TELEPHONE contains evidence relating to violations of Title 21, United States Code Sections 952, 960, & 963 (Importation of a Controlled Substance and conspiracy to commit same). The TARGET TELEPHONE is currently in the possession of the Department of Homeland Security, U.S. Customs and Border Protection, 9495 Customhouse Plaza, San Diego, CA 92154 (Seized Property Vault).

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in the item to be searched as described in Attachment A. These items may be or lead to: (1)

evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952, 960 and 963, and (2) property designed or intended for use, or which is or has been used as a means of, committing criminal offenses.

## TRAINING AND EXPERIENCE

4. I am a Special Agent with HSI, which is a component agency of the DHS. I have been employed as an HSI Special Agent since May 2018. I am currently assigned to the HSI DSAC San Ysidro field office in San Diego, California. My job duties are to investigate the smuggling of controlled substances into the U.S. I have been cross-designated by the U.S. Drug Enforcement Administration (DEA) to conduct narcotics investigations and enforce provisions of the Federal Controlled Substances Act, pursuant to Title 21 of the United States Code. Prior to employment with HSI, I was employed as a Special Agent with the U.S. Secret Service (USSS), from August 2017 until May 2018; as a Uniformed Division Officer with the U.S. Secret Service (USSS), from September 2014 until August 2017; and as a Police Officer employed by the Chapel Hill Police Department (CHPD), from September 2008 until September 2014.

5. Prior to becoming an HSI Special Agent, I graduated with honors with a Master of Science degree in Criminal Justice specializing in Homeland Security from Saint Joseph's University. I received a Bachelor of Arts Degree in Psychology from the University of North Carolina at Chapel Hill and I served in the Army National Guard as a brigade senior movement non-commissioned officer

6. As a HSI Special Agent, my formal training consisted of six months of residential instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs. I also learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and the use of electronic evidence. I have participated in training programs related to controlled substances, including but not

limited to marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances. I have participated in several narcotics investigations and executed arrests for drug-related offenses, including possession with the intent to distribute, transportation, and the importation of controlled substances. Additionally, through the course of my duties as a Special Agent, I have discussed narcotics smuggling and trafficking with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug smuggling, trafficking, and dealing in the San Diego area.

7. Based on my training and experience, I am familiar with the ways in which drug smugglers and traffickers conduct their business. During the course of my duties I have (1) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs crossing the border from Mexico into the United States, and while operating inside the United States; (2) participated in the execution of search warrants on cellular phones related to drug investigations; (3) executed or participated in numerous arrests for drug-related offenses, including possession with the intent to distribute; and (4) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers and the structure of their narcotics smuggling networks.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

    b. Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

    g. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

10. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often

do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular telephones yields evidence:

    a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

    d. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    e. relating to the purchase of vehicles to import methamphetamine or some other controlled substance from Mexico into the United States;

    f. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

      h.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

12. On February 26, 2019, at approximately 3:15 a.m., MONTERREY, a Mexican citizen, applied for entry into the United States from Mexico through the Otay Mesa, California, Port of Entry ("POE"). MONTERREY was the driver and sole occupant of a black 2005 Nissan with California license plate 7LFR104. In primary inspection, MONTERREY presented his Legal Permanent Resident Card to the Customs and Border Protection Officer ("CBPO") and said he was going to Vista, California. MONTERREY told the CBPO that the vehicle belonged to his employer, but he was unable to provide his employer's name. Upon inspection, the CBPO noticed the spare tire was very heavy, and sent MONTERREY and the vehicle to secondary inspection.

13. In secondary inspection, vehicle x-ray machines screened the vehicle and observed anomalies inside the vehicle's rear quarter panels, rear doors, and spare tire. A Human and Narcotics Detector Dog alerted to the presence of a trained odor emanating

from the vehicle's interior trunk area. CBPOs then found nine packages inside the driver side rear door, eight packages in the driver side rear quarter panel, eighteen packages inside the spare tire, eleven packages in the passenger side rear quarter panel, nine packages inside the passenger side rear door, and twenty packages inside the gas tank of the vehicle. The 75 total packages weighed approximately 38.92 kilograms (85.80 pounds), and preliminarily tested positive for methamphetamine.

14. Officers placed MONTERREY under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. TARGET TELEPHONE was seized from MONTERREY upon his arrest.

15. Following his arrest, MONTERREY waived his *Miranda* rights and elected to make a statement. MONTERREY told agents he responded to an advertisement about three weeks prior to his arrest. Through the advertisement, he was offered a job transporting people. He was told he would be at Palomar Station in Chula Vista around 5:00 a.m. every morning, and would wait for instructions to transport people when the boss told him. MONTERREY stated that he began the job and waited for people at the Palomar Station on numerous occasions. However, MONTERREY was never told to transport people. On several occasions in the week prior to his arrest, MONTERREY was instructed to leave the car at a Jack in the Box, leave the keys in the vehicle with the vehicle unlocked, walk across into Tijuana, and to return the next day. On the attempted entry that lead to his arrest, MONTERREY said the gas tank was full, which was unusual. Throughout his "employment," MONTERREY never transported people. MONTERREY denied knowledge of the drugs.

16. Based upon my experience and investigation in this case, I believe that MONTERREY, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some prohibited narcotics. Further, based on my investigation of drug importation and distribution conspiracies telephone contact with

smugglers can begin months or weeks before drugs are loaded in the car to plan and coordinate smuggling events. Communications can then continue through the time a co-conspirator is arrested, particularly if a co-conspirator is not aware of the arrest. Given MONTERREY' post-arrest statement that he has been doing this job for about three weeks, and given that crossing data indicates MONTERREY started crossing in the vehicle on February 8, 2019, I respectfully request permission to search TARGET TELEPHONE for data beginning on December 8, 2018, up to and including his arrest date of February 26, 2019.

17.  Based on my experience investigating narcotics smugglers, I also believe that MONTERREY may have used the TARGET TELEPHONE to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information can be stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

18.  Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of MONTERREY and his co-conspirators are stored in the memory of the cellular telephone described herein. Because the TARGET TELEPHONE has been in the custody of CBP since the date of MONTERREY' arrest, I believe that this information continues to be stored on the TARGET TELEPHONE.

//

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

8

## SEARCH METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to believe that MONTERREY used the TARGET TELEPHONE to facilitate the offenses of importing distributing methamphetamine. The TARGET TELEPHONE was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963.

23. There is also probable cause to believe that evidence and instrumentalities of illegal activity committed by MONTERREY continues to exist on the TARGET TELEPHONE.

//
//
//
//
//
//
//
//
//
//
//

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

10

24. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

PEARLENE HILL
HSI Special Agent

Subscribed and sworn to before me this 16th day of May, 2019.

HON. MICHAEL S. BERG
United States Magistrate Judge

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

11

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

Samsung Galaxy J2 Prime with IMEI #356375082635711 (Subject Telephone) currently in the possession of the Department of Homeland Security, U.S. Customs and Border Protection, 9495 Customhouse Plaza, San Diego, CA 92154 (Seized Property Vault).

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the Subject Telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Subject Telephone. The seizure and search of the Subject Telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the Subject Telephone will be electronic records, communications, and data such as emails, text messages, messages from text messaging applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, audio files, videos, and location data, for the period of December 8, 2018, up to and including February 26, 2019:

a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

e. relating to the purchase of vehicles to import methamphetamine or some other controlled substance from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952, 960 and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.